JACKSON BREWING CO.

VS.

THOMAS TRAVIA

No. 7801

May 17th, 1920.

7801

CHARLES F. CLAIBORNE, JUDGE.

This is a suit for the price of movables and licenses.
Plaintiff averred that it sold and delivered to the defendant a lot of bar-room fixtures contained in the premises No. 937 Decatur for the price of $240, and a State and City license for the price of $201.77; in part payment of which the defendant has paid $150, leaving a balance due of $291.77, which the defendant refuses to pay.

The defendant filed an exception alleging that under the provisions of Section 11 of Act 176 of 1908 the plaintiff was prohibited from owning or selling the things mentioned in its petition. But subsequent to the filing of this exception the question was decided adversely to defendant's contentions in the case of Jackson Brewing Co. vs Panno, 13 Ct. App., 336.

The defendant then filed an answer in which he denied each and every allegation of plaintiff's petition and specially averred that:

"the premises No. 937 Decatur Street had been operated as a saloon and eating-house by some person unknown to respondent prior to September 1915; that respondent negotiated with the Jackson Brewing Company for the lease of the said premises for the purpose of reopening said place and conducting a saloon and restaurant therein; that the agent and officers of the said Jackson Brewing Company, with whom respondent negotiated, informed him that a subsidiary Company had been organized in corporate form known as the "Lafayette Realty Company", for the purpose of leasing and controlling buildings intended for use as bar-rooms and beer saloons, and that the lease would be made in the name of the "Lafayette Realty Company", through which Company the

484

said premises would be leased to respondent after being put in a habitable condition by the reconstruction of the roof and necessary repairs to the ceiling, floors, and walls. That your respondent agreed to lease the said property from said Brewing Company and agreed to buy the bar-fixtures, furniture, and utensils therein contained contingent upon a delivery to respondent of the premises in a habitable condition and fit for the purpose contemplated. That, hwoever, the said Jackson Brewing Company and the Lafayette Realty Company failed to deliver to defendant the premises in a habitable condition and he was unable to move into same and accept the delivery of the fixtures, furniture, and license therein contained. That upon the default of the said Jackson Brewing Company and its said subsidiary Company, the Lafayette Realty Company, your petitioner refused to accept the said premises and refused to accept the delivery of the fixtures, furniture, and utensils, and the City and State license described in plaintiff's petition, and that the same continuously remained in the possession of the plaintiff, and were never delivered to respondent; that, therefore, ho sum whatever is due the plaintiff on account thereof. Respondent specially avers that the contract alleged by plaintiff, is illegal, null and void and contrary to law in that the said Lafayette Realty Company was organized by the officers and agents of the said Jackson Brewing Company for the sole purpose of evading the mandatory provisions of Act 176 of 1908 known as the "Gay-Shattuck Law" and more particularly the provisions of Section 11 prohibiting Brewing Companies or their officers, directors or stockholders from obtaining license for the business of conducting bar-rooms, beer saloons, etc., or to be financially interested in any concern so engaged or to be the owner, or lessee, or to be interested in any lease of premises used for any such bar-rooms or saloon business; that the said Jackson Brewing Company, its

officers, and directors, and stockholders and their agents are exclusively the officers, directors, and stockholders of the said Lafayette Realty Company, which said Lafayette Realty Company was organized for the purpose of violating the provisions of said Act 176 of 1908, regulating the saloon business".

There was judgment for the defendant, and the plaintiff has appealed.

By consent of parties the licenses above mentioned were sold for $150.00, and the amount thereof credited to the price of the licenses claimed by plaintiff.

The Secretary-Treasurer of plaintiff Company swore positively to the sale and delivery of the fixtures and licenses as alleged in the petition.

The defendant, as a witness, does not deny that he bought the fixtures and licenses; but he testified that "one man in the Godchaux Building" told him some one would come and fix the building in a couple of days; that as no one came he left the building, locked up the fixtures in it; that he occupied the building nineteen days.

There is not a line of testimony concerning the Lafayette Realty Company or its relations to the plaintiff.

The defendant introduced in evidence the judgment of this Court in the suit of the Lafayette Realty Company vs. Thomas Travis, 11 Ct. App. 275. The Court said:

"Plaintiff sued for and recovered in the trial court 12 months rent, under an alleged oral lease from month to month beginning September 18th. On appeal defendant's first contention is that no rent at all is due because plaintiff failed to put the premises in repair as it had agreed to do as a condition precedent to the taking effect of the lease. This defense is not sustained; for if there was any agreement at all upon the subject of repairs, the evidence shows that it was made during the term of the lease and while defendant was in possession and enjoyment of the property, and conceding that plaintiff did, during the term of the lease, agree to repair the property, its failure to comply

486

therewith did not terminate the lease, defendant's remedy being to notify his landlord and to make the repairs himself if the matter should fail to do so".

This decision leaves the defendant without any defense whatever, for it declares that the defendant did obtain a lease of the premises No. 937 Decatur Street; that he took possession of the premises; that no agreement for repairs had been made as a condition of the lease; that he left the premises of his own accord and locked up the contents himself.

The judgment is therefore reversed and judgment is now rendered in favor of plaintiff condemning the defendant to pay to it the sum of two hundred and ninety-one 77/100 dollars with five per cent. per annum interest from January 28th., 1913, till paid, and all costs of both Courts.

May 17, 1920.